Good morning, Your Honors, and may it please the Court. My name is Derek Newman, and I would like to discuss two issues. First, that an invoice for services provided that a contractor submits to the government qualifies as a certification under the False Claims Act, and if services were in fact not provided, it qualifies as a false claim. The second point that I'm going to discuss is that I'll start with my first point. This Court in Hendow v. University of Phoenix looked at the term certification and found that the term certification has no special significance. Any statement, assertion, or certification that is relevant to the government's decision to pay qualifies as a certification. And the Court also found that if that communication is false, it is a false claim. Here, in her pleading, Reiber pled in paragraph 17 that BCSI had a contract with the government, and that contract required it to submit invoices for services provided. And it also stated, the complaint in paragraph 17, that the contract provided the level of services. The services must conform with the knowing that it did, in fact, not provide those services. So, BCSI is incorrect when it argues on this appeal that Reiber did not plead a false claim. The invoices requesting payment for services provided that were, in fact, not provided, that is the false claim. Let me just focus on one aspect. I know I'm simplifying things, but let's just focus on the not staffing all the, is it guard posts or? Yes, Your Honor, manning posts. Manning posts, right. So, I don't even have a good sense from that one invoice you attached to the complaint. Is it just a flat fee for the personnel are required to staff all the different posts? Yes, Your Honor. At a basic level, it's a very simple agreement. Specifically, the government pays a sum certain in exchange for a certain level of services. And the contract. And there's no discretion within that? That's what I guess I'm trying to figure out. Is it, we're going to pay you a sum certain, but we are directing you to have two people here, one person, all the way across? Or is it, you know, we'll leave it to your discretion to figure out what's required under the particular circumstances? Your Honor, the contract had requirements. In fact, it was called post-manning requirements. And in the contract itself, there was a post-manning requirements summary that listed, with particularity, which posts must be manned during which time of day under which circumstances. That's what you attached to your complaint? Yes, Your Honor. That little chart. That's one attachment. That's attachment A, which leads to my second point. And that is, Reber properly pleaded her false claims cause of action. This court, in B, verse Lungwitz, held that a relator can plead by doing one of two things. Either by listing representative examples of a false claim, or by pleading particular details of a scheme to submit false claims paired with reasonable indicia that leads to a strong inference that a false claim was actually provided. Okay. In this case, Reber did both. And I'll start with the representative example, which is what we were just discussing. That's the attachment A and the different attachments? A, B, C, and D. So you would say, though, that you didn't even have to provide those? Did not have to. Okay. So but why don't you start with that, and then you'll get, though, because I'm not, I couldn't make edge of tails of these attachments, to be honest with you. But so I want to hear what you have to say on the other front as well. Well, then, Your Honor, I'm glad that you asked. And specifically, the attachments relate to February 2007. The contract provides that specifically what posts must be manned. That's Exhibit A for February 2007. Exhibit B for February 2007 is BCSI's own records of what posts were actually manned. Now, the Court points out, Judge Watford notes, that it's difficult to decipher Exhibit A and Exhibit B because the Court was not an employee of BCSI. But my client, Reber, was. So she created Exhibit C. Exhibit C compares Exhibit A and B and shows specifically what posts weren't manned at what times of day. And the conclusion is, is that 64 posts weren't manned in February 2007. Yet, BCSI in Exhibit D submitted an invoice for services provided. Can you just, I'm looking at Exhibit C. Yes. What's the significance of the gaps in the chart? Are there supposed to be figures in every one of those boxes? Is that the idea? Your Honor, the chart shows a calendar for February. It even bleeds over into March. And it's coded. It's coded by time of day and type of post. Certain days are blank. Those are days when guards were manned. That chart shows days when guards were not manned and describes which guard posts were not manned. She takes that by basically taking the details off of Exhibit B, which was a schedule. It was a schedule of who was actually posted. And BCSI argues in its appeal that it was just a mere schedule. And it doesn't say who was actually posted. The complaint pleads otherwise. It is a schedule to inform the guards when to show up. If nobody is scheduled, nobody shows up. In addition, the complaint pleads that Reber, my client, viewed, based upon her firsthand knowledge, guard posts that were unmanned. And she interviewed her colleagues and took written notes. And they, too, described seeing guard posts that weren't manned. So between her firsthand knowledge, her colleagues' firsthand knowledge, and the schedule, which was designed to schedule guards and if there wasn't somebody scheduled, nobody showed up, between those three pieces of evidence, we have a representative example of a false claim made in February 2007. Because Exhibit D, the invoice, says it's for services provided. But in fact, the complaint pleads, BCSI knew at the time it submitted those invoices that services were not provided. The complaint also pleads particular details of a scheme to submit false claims paired with reasonable indicia that leads to a strong inference that false claims were actually submitted. The scheme is as follows. BCSI, the contractor, employed another defendant, Lou Allen, as its captain and incentivized Lou Allen to cut costs in connection with providing the services under this government contract. In order to cut costs, Lou Allen decided he was not going to post guards because that was contrary to the express terms of the agreement. He was not going to properly train guards. He saved money there, too. And finally, he decided he wasn't going to comply with the collective bargaining agreement, which required him to pay guards for guard mount time, which is when they have to show up early, become equipped, get briefed on what happened in the prior shift so that they're prepared. Guards didn't show up. Government didn't get what it paid for. And the complaint also pleads that the same Lou Allen, who was in charge of staffing the posts, in charge of paying the guards, he was the same person who submitted invoices for services provided, knowing that services were not provided. So while we didn't have to submit the February 2007 example, in alternative, we could have just merely described the scheme, which I just did, and the government, having been inside, has documentation to support how every invoice was a false claim, how BCSI submitted an invoice for services provided, knowing that services were not provided, and based upon that, the government made payment. That's all that Reber has to plead in order to obtain a certification. But it does in two regards. It's either implied, which was recognized in the Abebe v. Longwood's decision, or express. The express certification is, it says, for services provided. And the contract says what those services must be. Those services must conform to the requirements of the contract, and that contract also says that the invoice will be submitted after services are provided, once they're provided. Having submitted an invoice for services provided, that actually weren't, there's a certification that services were provided, and knowing at the time they were submitted that services were not provided, a false claim was made, and liability lies. So that's the express certification. The implied certification is in the event this Court determines that that's not sufficient. The Court would like magic words, like, I hereby certify that I Abebe case found that implied certification is a proper standard in the circuit, and thus, even if there isn't an express certification, we would submit there's clearly an implied certification. Where's the contract provisions that say which posts have to be manned? Exhibit A is a representative example of February 2007, and the complaint pleads that those requirements are thousands of pages long, which is the reason why Reber didn't attach them all, but the complaint says she will make them available in discovery. And here, because we're in federal court, we're supposed to state a short and plain statement, and that means that it's probably improper to attach thousands of pages, so we attached one, February 2007, as a representative example. And paragraph 17 of the Second Amendment complaint states that invoices are to be manned and that services must conform to the requirements of the contract. It wouldn't make sense, Your Honors, for there to be a flat fee paid to BCSI and allow it to post whatever guards it wants whenever it wants. I guess one of the arguments, if I understand the defendant's briefing, is that this assumes some rigid constancy to the setup, which is not necessarily true. And so by simply having the documents that you actually don't document the foundation for a false claim, would you address that? If Your Honor would look at Exhibit A, the court will see that there are two categories. One is when a ship is in port. One is when a ship is not in port. Some of them have crossover. Sometimes the main guard, for example, at the main gate, must be posted whether there's a ship in port or not. And if you look at Exhibit B and Exhibit C, which were created to compare the first two exhibits, the court will note that there are times when a guard is supposed to be posted, regardless of whether a ship is in port or out of port, but in fact no guard was posted. There's also express allegations in the complaint of shenanigans. For example, in the middle of the night, when a guard must be posted, it's unlikely the Navy would notice nobody was posted, so that's when guards weren't posted. It seems like we're talking, not we, but the two briefs are talking past each other to a degree. Because you say, look at this exhibit, that's a sample. And basic contracting says, well, you actually haven't shown us, I mean, you've shown us these papers, but you haven't actually shown us an instance where the post went unmanned. Tell us the post, the time, the date, the contract requirement. You haven't done that. The court should not reject the representative example that we submitted, but it may, and Reber still should succeed on this appeal because of the descriptions that allow the court to conclude, based upon a strong inference, that false claims actually occurred. Discuss specific shifts that were unmanned, discuss the evidence to support that, Reber's firsthand knowledge, her colleagues, the schedules. And so even if the court can't exactly understand Exhibit C and doesn't want to take time. I think I can understand it perfectly well. It looks like your basic standard government contract stuff. I mean, I am familiar with this. So that, I understand it perfectly well. My question is, does it say and tell what you say it does? And so I'm looking actually in the complaint to try to find where we say, well, this post was unmanned, as opposed to posts were unmanned based on a That's where I'm wondering about the gap. Maybe you can help me out on that. Well, Your Honor has identified the two different methods by which Reber may plead. The first being a representative example, and the court has noted that Your Honor does not necessarily see in Exhibit C which particular posts weren't manned. And the second way she could plead is by providing details upon which reasonable inference can be made. And I believe that Your Honor's review of the second minute complaint, which the court just read, would qualify. I'd like to reserve my remaining time for rebuttal. Thank you, Your Honors. Good morning, Your Honors, and may it please the court, my name is Mark Troy for Basic Contracting Services, Inc. I'm going to jump to the crux of the matter here. A minus B equals C. A is what the plaintiff calls the requirement. B is the only word you need to look at on B because it's hard to understand what that is. It's a schedule of the future. And to the extent there are posts left out of that, it's just a schedule. C is the plaintiff's own document that presumes that the posts that were unfilled in that schedule actually went unmanned. Well, she alleges that, in fact, getting the exhibits confused, is it B, is B the schedule? What you say is B is the schedule for the future. She alleges that, no, it's in fact an actual representation of the folks who were at particular posts. Well, she doesn't say that. She acknowledges that it is, she says repeatedly in the complaint, that it is a schedule. She cites it as evidence that it is something, that it reflects what actually occurred. But she doesn't make that allegation about that document. She's just noting it is a schedule. Sure. So it sounds like you guys have a dispute as to how significant that document is. In terms of putting your client on notice as to what it needs to defend against, I don't see, why isn't that adequate? What are you in the dark about? Oh, well, we're in the dark about everything. Well, just prove that summary judgment that, no, actually that's in your schedule. Here are the documents that reflect who actually was at the post. But there's nothing in the complaint that limits the allegation and the scope of this litigation to that piece of evidence, that your schedule for the future was ultimately not fulfilled. The allegations go far beyond that. That's just what the plaintiff points to as an example. And counsel today said that's an example. There can be a thousand different ways to make an allegation that any given post went unmanned of 20 posts a day for several years. This is an impossible target. Look, there's only two questions. Let's just focus on whether the post was manned, because I know there are other aspects of the fraud claim. But let's just focus on that one. Either, I mean, there's just two issues. Did the contract require someone to be at that post at a given time? And was there, in fact, someone posted there? Those are the only two questions, and they seem to me to be pretty objective, pretty easy to answer yes or no. You know what she's alleging, so why don't we just get to the proof? And you can show that, in fact, actually, the contract either doesn't require someone to be there at that time, or if it does, there was someone. But we don't know what she's alleging. That's my point. The example that she gives of that February is a schedule with unfilled posts. That's just one thing that she's saying as a basis for making that claim. She could also be saying, what she should be saying is, I witnessed an unmanned post. I knew that it was a requirement, and I staked it out, and I saw that no one was there. When she says, oh, I talked and interviewed other guards, and I took notes, she doesn't say what those guards said. So the fear in this case is that it would go far beyond. Yes, we know that we can prove that the schedule is merely a schedule, but that's not going to be sufficient proof to defeat the whole case, because the whole case is far greater than the allegation that there was an unfilled schedule. She doesn't have to prove her case yet, but there is enhanced pleading that she's required to comply with. So then the question is, on this she talks about August of 2007 to September of 2008. There were 3,654 posts that weren't filled, she says. So let's just take the post-filled issue. In your view, what kind of allegations does she need there to meet the pleading requirement? She needs at least an indicia of reliability of her allegation. So what she starts with is, here's the schedule for the future, and it has some openings in it. She presumes they were not filled. That is not plausible, so she's not providing a plausible statement to begin the case. If she had, the reliable indicia is eyewitness accounts, people's names, dates, times, and I'm not suggesting that it has to be the complete set, list every single person, but she hasn't done it even once, and that's why they're so unreliable. What you're saying is that summary evidence that's not actually tied up to specific incidents is insufficient. It is. There's just, there's nothing reliable in her allegation. It is 100% speculation, which is odd given that she works there, and she works there, my understanding is, up today, and there's not one incident where she can cite in the complaint that states something reliable that that scheduled post was not actually fulfilled. There's not one of them, and so that is what cuts her off from going forward. Okay, go ahead. No, the only question I have is how, I mean you keep telling us that that Exhibit B or Attachment B is merely a schedule, it doesn't reflect the people who are actually at any given post, but how do we know that at this stage? She says that it is, that it does reflect the actual staffing. Well, she just says it. The document itself says that it's a schedule, and I think if you parse the words out in her complaint, she identifies it as a schedule, and that's why she produced Exhibit C, which is her own document to say, oh, here's the difference between the requirement and the schedule. So she's representing Exhibit C as, and counsel said so today, Exhibit C is the actual missing post. Okay, so if she were permitted to amend her complaint and say, well, there is, schedule does not equal presence one way or the other, if we were to take that as a working proposition, but she were to amend her complaint to say, okay, well, here's the schedule, and here's the work requirement, and I'm going to show you that on this and this day, man post 52 in this part of the base was unmanned, and I know that because. Then if she showed a couple of representative examples, would that at least get her on that part of the claim to the next phase? It would certainly have a much greater chance of getting past that hurdle. I don't want to say that it would do it, but that goes a much longer way in getting there. Okay, so then the question would be, what would be wrong with letting her amend her complaint at this point? She's had three chances to write a complaint. The original complaint, we filed a motion to dismiss. She voluntarily withdrew it. The second one, the judge reviewed. The judge went out of his way to give some free legal advice, some pointers on what should be considered for an amended complaint. It was ignored. We provided the district court with a redlined version to compare the second amended complaint versus the third amended complaint, and all that was added was nothing, just much of the allegations, the ones we're not talking about, were verbatim the same. So there's no question that those were not amended at all. The notion, what was really added to the second amended complaint were a bunch of conclusions, some of which were repeated today, that all invoices are false claims. All the contracts are, which contracts are at issue? All of them. Which invoices? All of them. That is not specific. That is putting us on the defense to defend every contract, every day, every shift, and a very difficult and burdensome task, and that's what the law, that's what the cases and the IBED case talk about as, and the CAFASO case, talk about the burden on a defendant to do that. What about the training? That's her other part, key allegation, right, that the contracts for all guards, you have to get 120 hours of apprentice training and 40 hours of sustainment training. If you look at the complaint and parse the words of it, she's not alleging that she or anyone did not have the required hours of training. The training allegation is that training was kind of lousy. Training consisted of reading pamphlets. Well, okay, so what? But she's trying to set up the allegation as, you know, there was a strict number of hours and it was not fulfilled. But when you read what her allegation is to back that up, it doesn't say that. It just complains about the quality of the training. What I was just about to say was that in 9B cases, when you consider the burden on the defendant to have to defend nonspecific allegations, I like the court to know that it's also a burden on the government. Because even though the government has declined to intervene in the case, all KETAM cases come down to burdening the government. My first witnesses that I'm going to depose are going to be government people, people who testify at trial. It all comes down to that. It's expensive for the government to do it. It's expensive for the defendant to have to defend these cases. It's a tremendous burden, and the government isn't even in the case. In the plaintiff's reply brief, she says that the second amended complaint attaches a guard schedule, showing that they failed to staff 64 positions during that period. As I said, those are schedules. There's no eyewitnesses that they weren't fulfilled. There's no particular insight by this plaintiff as to how billing works. Why would that be reflected in an invoice? It's just a general statement. Well, invoices are how they get paid. But in the hypothetical that if a guard post had gone unmanned, she doesn't know anything or allege anything about how that would affect the company's billing to the government. Your Honor asked, is it a flat fee every month? Well, the company can always make an adjustment to what it bills, and it's not the same every month because the government, the Navy, changes the post manning requirements all the time. So it's not that, and that information isn't known to the guards who are posted. They just know what post they are assigned to. So this plaintiff has no basis for knowledge about the accounting, about how schedules are filled, and about how claims are submitted. What she's alleging is poor performance, and the strong false claims case law on contract performance states that that is not what a false claims act case is, that that is nothing but a breach of contract claim, and relators don't have standing to bring breach of contract claims. They only can bring false claims act cases. Can I just ask you this? It doesn't sound to me as though you're really challenging as a legal matter, but the relator's implied certification theory, right? You acknowledge that we've accepted that in our circuit as a viable mode of proceeding, right? Yes, I have accepted it. The post manning issue has nothing to do with a certification. It's a, what do you call it, direct false claim allegation. It's you had a contract, you did not perform it. False certification cases are when you perform a contract and meet the requirements of the contract, but in doing so you fail to comply with something else, a law or a regulation. So that's not what the allegation with the post manning is here. It might be the allegation with regard to the training and the paying employees pursuant to the collective bargaining agreement, but it hasn't been laid out in that way with any specificity either in terms of why does the government, where is there any allegation that the government cares about the company's compliance with its collective bargaining agreement? It may care, but there's no allegation of that. So it's not. It's more of a straight direct contract breach claim. That's exactly what it is. And lastly, in my last couple seconds, just point out that district courts are giving key TAM plaintiffs one or two opportunities to amend complaints. There is no rule that says how many chances you get. The appellate court hasn't set that rule, but the trend is that you get one or two chances. And when the judge goes so far as to tell you, hey, here's some advice about how to state a proper allegation and you ignore it, you're going to get the case dismissed. And in this case, I submit that the district court did not abuse its discretion in ending this thing after three versions of the complaint. Thank you. Exhibit C, Your Honor, shows which posts were unmanned. For example. No, it shows which posts according to the schedule. Not according to the complaint, Your Honor. The complaint alleges in paragraph 18 that the schedule is what triggered the guards to show up to work. Paragraph 19 says the guards were scheduled to be manned and, in fact, were not manned. Paragraph 20 alleges that Reber has firsthand memory of specific guard posts that weren't manned and she also relied on interviews. And exhibit C. And so where is that? Why doesn't she tell us that in the complaint? Well, because. I mean, I have a particular memory that some guard posts weren't manned and I don't even know which ones, but I'm not going to tell you. I mean, that isn't really. That kind of stretches some credulity here. If she were to say guard post 52, however. She did. She didn't. Exhibit C says that on February 5th, graveyard shift south patrol had no guard manned when exhibit A required it and the complaint alleges that no one showed up. The complaint alleges she has firsthand recollection of confirming no guards showed up. The complaint alleges she interviewed other employees with firsthand knowledge. In addition, on February 5th, day shift south patrol also wasn't scheduled and the complaint alleges, in fact, was not manned. But, Your Honor, that's going too far. We're just required to plead a short and plain statement and under Rule 9b we have to do it with particularity. We have to state the false claims. We have to provide reasonable indicia upon which this court can draw a conclusion. Reber's done that. She doesn't have to prove her case now. She will later. And in discovery, well, BCSI will know which day shifts they need to defend because she's obligated to tell them. She will provide that to them. But for her pleading, she need only make allegations. The court should reverse. Thank you, Your Honors. Thank you. Case just argued is submitted. Reber v. Basic Contracting. Thank you both for your argument.
judges: GOODWIN, McKEOWN, WATFORD